Sabrina K. WIMM, Individually and as Representative of the Estate of Arron Paul Speer, deceased, and Paul Speer, Plaintiffs–Appellants,

v.

JACK ECKERD CORP.,
et al., Defendants,

Jack Eckerd Corp. and Eckerd Drugs of Texas, Defendants–Appellees.

No. 92–1181.

United States Court of Appeals,
Fifth Circuit.

Oct. 4, 1993.

Carl David Adams, Dallas, TX, for plaintiffs-appellants.

Lea Francis Courington, Scott W. MacLaren, Gwinn & Roby, Dallas, TX, for defendants-appellees.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case arises out of the death of Arron Speer, the eleven-year-old son of the plaintiffs, Sabrina K. Wimm and Paul Speer ("Wimm and Speer" or "plaintiffs"). Arron Speer died after receiving several doses of a codeine-based prescription cough syrup provided by the defendants, Jack Eckerd Corporation and Eckerd Drugs of Texas (collectively referred to as "Eckerd"). The plaintiffs brought suit to recover damages for Arron's death. They now appeal the district court's denial of their motion for leave to file an amended complaint. They also appeal the district court's order granting summary judgment in favor of Eckerd. We affirm both decisions of the district court.

I

Arron Speer was a normally healthy, active child until he awoke one morning with severe shortness of breath. Arron felt very weak and could not speak above a whisper. Sabrina Wimm, Arron's mother, promptly took Arron to a physician, who diagnosed him as having the flu and prescribed a codeine-based cough syrup.

Wimm went to an Eckerd drug store to fill the prescription for the cough syrup. The physician had prescribed a dosage of two teaspoons every four hours. However, according to Wimm the label attached to the cough syrup bottle by the pharmacist indicated that the proper dosage was two tablespoons every four hours.

Wimm gave Arron two tablespoons of the cough syrup around 3:30 p.m., and again at 7:30 p.m. When Arron went to bed at 10:00 p.m., Wimm left the cough syrup with him and told him that he could take one teaspoonful during the night if he needed it. When she went to Arron's room to check on him the next morning, he was dead. It appeared that he had taken one dose of cough syrup during the night.

It was later determined that Arron had suffered from viral croup, and that the condition caused the airways in Arron's lungs to become blocked with mucus. Dr. Linda Norton, a forensic pathologist, testified that Arron died from a lack of oxygen, resulting from airway obstruction caused by the viral croup. Dr. Norton also testified that a codeine-based cough syrup is not an appropriate drug to prescribe for a child suffering from shortness of breath, because codeine depresses the breathing function and sedates the patient, making him or her less sensitive to air hunger. Dr. Norton concluded that the codeine ingested by Arron had contributed to his death, although the codeine was taken in an appropriate, therapeutic amount. Dr. Marc Krouse, from the Tarrant County medical examiner's office, testified that airway obstruction resulting from the croup was a cause of Arron's death, but ingestion of codeine was not.

Wimm and Speer filed suit against Eckerd in Texas state court.[1] Thereafter the case was removed to federal court and transferred to the district court for the Northern District of Texas. The plaintiffs' first amended complaint alleged that: (1) Eckerd negligently failed to warn Sabrina Wimm that it was dangerous to administer codeine to a child suffering from shortness of breath; and (2) the cough syrup sold to Wimm was unreasonably dangerous because it was not accompanied by an appropriate warning.

Before any formal discovery had taken place,[2] and nine months before the district court's deadline for amendments to the pleadings, Eckerd moved for summary judgment on the claims raised in the first amended complaint. Wimm and Speer filed a response to the motion for summary judgment, and a motion for leave to file a second amended complaint. In their motion and second amended complaint, the plaintiffs sought to add two new matters. First, the plaintiffs alleged that Eckerd negligently mislabeled the bottle of cough syrup—indi-

---

1. A separate lawsuit against the physician who prescribed the cough syrup ended in settlement.

2. The depositions of Drs. Norton and Krouse, referred to above, apparently were taken in connection with the earlier lawsuit against Arron's physician.

cating a dosage of two tablespoons rather than two teaspoons every four hours—and thereby caused Arron Speer's death by instructing his mother to give him an excessive dose of cough syrup.[3] Second, Wimm and Speer brought a claim under the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987), alleging that Eckerd, through an extensive advertising campaign, had falsely represented to the public that it would act as a safety net by warning its customers of the dangers of medications erroneously prescribed by their physicians.[4] The district court denied Wimm and Speer's motion for leave to file a second amended complaint and granted Eckerd's motion for summary judgment. Wimm and Speer appeal both of the district court's rulings.

## II

### A

The plaintiffs argue that the district court erred by denying their motion for leave to file a second amended complaint. Under Federal Rule of Civil Procedure 15(a), pleadings may be amended once as a matter of course before a responsive pleading is served, and thereafter by leave of court. *See* Fed.R.Civ.P. 15(a). The rule provides that such leave "shall be freely given when justice so requires." *Id.* "However, it is by no means automatic." *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir.) (citing *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir.1979), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980)), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981).

In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Overseas Inns S.A. P.A. v. United States,* 911 F.2d 1146, 1150 (5th Cir.1990); *Addington,* 650 F.2d at 666; *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion. *Overseas,* 911 F.2d at 1150; *Addington,* 650 F.2d at 666; *Pan–Islamic,* 632 F.2d at 546. "[I]f the district court lacks a 'substantial reason' to deny leave, its discretion 'is not broad enough to permit denial.'" *Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985).

The district court denied Wimm and Speer's motion for leave to amend because it found that the motion was filed in bad faith and with dilatory motive. The district court stated:

> The motion is obviously interposed by plaintiffs in an attempt to avoid summary judgment. The record reflects that plaintiffs have had ample opportunity to investigate their claims and to seek leave to amend their complaint. Moreover, it appears that the amendment sought would be futile as the amount of cough syrup given to decedent has been thoroughly investigated and the determination made that

---

**3.** In their motion Wimm and Speer described their allegation of mislabeling as an additional factual allegation related to their original claim of negligence. However, we feel that the allegation of mislabeling is better characterized as a separate claim, because it introduces a separate factual basis for recovery. *See* Record on Appeal, vol. 2, at 286 (Plaintiffs' Second Amended Complaint) (alleging that Eckerd was negligent "(1) in failing to adequately warn Sabrina [Wimm] of the hazards of giving an opiate-based cough syrup to someone with shortness of breath and (2) *independently,* in mislabeling the medicine bottle, causing Sabrina to give her son twice

the dosage prescribed by the physician" (emphasis added)).

**4.** The DTPA declares unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *See* Tex.Bus. & Com.Code Ann. § 17.46(a) (Vernon 1987). Such acts or practices include "representing that goods or services have ... characteristics ... [or] benefits ... which they do not have," *see id.* § 17.46(b)(5), as well as "advertising goods or services with intent not to sell them as advertised." *See id.* § 17.46(b)(9).

decedent did not receive a toxic dose of the cough syrup. Having considered the record, the court is seriously concerned about plaintiffs' apparent bad faith and dilatory motive in seeking leave to amend their complaint at this time.

Record on Appeal, vol. 3, at 661–62. Because the record supports the district court's finding that the plaintiffs' motion was filed in bad faith and with dilatory motive, we affirm on that ground.[5]

The plaintiffs knew of the facts underlying their mislabeling claim before this action commenced. A few months after Arron Speer's death, Sabrina Wimm executed an affidavit which stated that she "gave Arron two tablespoons of the cough syrup, according to the medicine bottle." Wimm referred to that statement in a later affidavit:

> I want to confirm once more what I stated in my June 1989 Affidavit. Specifically, although Dr. Kenneth Adams … gave my son a prescription calling for two *tea* spoons of medicine every four hours, the label on the bottle that was given to me by the Eckerd's Drug Store called for two *table* spoons of the syrup, and following the instructions on the bottle, that is the dosage that I gave to Arron.

This action was filed roughly twenty months after Wimm first stated that the label on the medicine bottle called for a dose of two tablespoons. It was not until nine months later, after Eckerd filed its motion for summary judgment, that Wimm and Speer first asserted their claim for mislabeling.

The facts of the DTPA claim were also known to the plaintiffs long before they first asserted that claim. Sabrina Wimm alleges that she has "for very many years, been a customer of Eckerd's drug Stores," and that she expected to be warned about the dangers of prescription drugs because of Eckerd's representations to her "over the years." Because Wimm alleges that she relied on Eck-

erd's representations when she purchased the cough syrup from an Eckerd drug store, her claim is clearly premised on representations which were made before purchasing the cough syrup and long before this action was filed. However, those representations were not made the subject of a claim in this case until approximately thirty-three months after Arron's death and nine months after this action was commenced.

In *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir.1981), we commented that circumstances similar to these might give rise to an inference of bad faith, justifying denial of leave to amend. *See id.* at 599. Dussouy brought suit alleging an unlawful conspiracy in restraint of trade. *See id.* at 596. When discovery revealed that one of the two alleged conspirators had not been involved, Dussouy moved to dismiss that party from the action. *See id.* at 597. Thereafter the remaining party moved for dismissal, arguing that no conspiracy could be shown because only one defendant remained, and therefore an agreement between two or more parties could not be proved. *See id.* After the district court granted the motion to dismiss, Dussouy moved to vacate the dismissal and amend his complaint, to allege that the second defendant conspired with a third party not originally named in the action. *See id.* The district court denied leave to amend, and we reversed. *See id.* at 600. We determined that Dussouy's failure to amend before the district court dismissed the case did not demonstrate bad faith on his part, even though Dussouy knew from the outset of the litigation about the facts which formed the basis for his motion. *See id.* at 599. We so concluded because (a) Dussouy proved his good faith by voluntarily dismissing his claim against one alleged conspirator when discovery revealed that there was no support for that claim; and (b) Dussouy was entitled to bring a claim of conspiracy against a single

---

**5.** The district court held in the alternative that the motion should be denied because it was improperly signed. Because we affirm the district court's decision on the ground of bad faith and dilatory motive, we need not decide whether the district court erred by denying leave to amend on account of the improper signature. We are concerned, however, by the district

court's resort to such a severe sanction for the improper signing of a motion. *See Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 878 (5th Cir.1988) (en banc) ("[T]he district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.").

conspirator, and therefore he correctly believed that the allegations added by his amendment were unnecessary to his original complaint. *See id.*

We commented, however, that absent these special circumstances,

> [a party's] awareness of facts and failure to include them in the complaint might give rise to the inference that the [party] was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate.

*Id.* This case presents circumstances very similar to those which we foresaw in *Dussouy.* Wimm and Speer were aware of the facts supporting their mislabeling and DTPA claims before they initiated this action, but they did not present those claims until summary judgment was imminent, nine months after the action was initiated. Consequently, we conclude that the district court's finding of bad faith and dilatory motive is supported by the record and by our opinion in *Dussouy. See id.; see also Mitsubishi Aircraft Int'l, Inc. v. Brady,* 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim which is "usually apparent at the outset of a case ... strongly suggests either a lack of diligence ... or a lack of sincerity"); *cf. Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 391 (5th Cir.1985) (holding that district court abused its discretion by denying leave to amend where movant "asked for amendment promptly upon discovering the basis for new allegations"); *Barrett v. Indep. Order of Foresters,* 625 F.2d 73, 75 (5th Cir.1980) (affirming denial of leave to amend, although bad faith and dilatory motive not found, where "amendment sought to add several new parties and additional counts," and "[e]ven though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters

... which could not have been raised initially"); *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir.1979) (upholding denial of leave to amend, although bad faith and dilatory motive not found, where "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint"), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980).

Wimm and Speer contend, nonetheless, that the district court abused its discretion by denying their motion, because they filed it eight months in advance of the district court's deadline for amendments to the pleadings. Wimm and Speer argue that they were entitled to rely on the district court's deadline. However, they cite no authority which supports the proposition that the district court was bound to permit all amendments sought before the deadline, and we are not persuaded that that is what the law requires.

The only case cited by Wimm and Speer, *Podlesnick v. Airborne Express, Inc.,* 94 F.R.D. 288 (S.D.Ohio 1982), does not support a finding that the district court abused its discretion.[6] In *Podlesnick* the district court granted leave to amend, partly because leave was sought before the deadline for amendments set by the district court. *See id.* at 291. However, the *Podlesnick* court's favorable consideration of that factor hardly establishes that it is determinative in this case. First, *Podlesnick* is distinguishable on its facts. There the plaintiff first learned of the factual basis for his amendment after he filed his original complaint. The plaintiff then delayed less than four months in bringing the claim, six weeks of which was devoted to intensive settlement negotiations, *see id.,* which might have made the amendment unnecessary. By contrast, Wimm and Speer were aware of the factual basis for their claims for over a year before this action was commenced. After the action was initiated, the plaintiffs delayed inexplicably for nine months before bringing their claims.[7] Con-

---

6. Wimm and Speer forthrightly concede that they are unaware of any decision of this Court which supports their position.

7. Wimm and Speer argue that they properly refrained from bringing their DTPA and mislabeling claims earlier because they had not conducted discovery regarding these claims, and they

sequently, this case presents a more serious example of delay than does *Podlesnick*, and the district court here need not have reached the same result that was reached in *Podlesnick* simply because leave to amend was sought before the deadline in both cases. Second, the district court in *Podlesnick* merely indicated that the filing of a motion for leave to amend before the deadline militates against a finding of undue delay. *See id.* The *Podlesnick* court did not intimate that denial of such a motion, when filed before the deadline, necessarily constitutes an abuse of discretion.

Wimm and Speer's failure to assert their DTPA and mislabeling claims sooner, even though they were aware of the underlying facts at the outset of this action, supports the district court's finding of bad faith and dilatory motive.[8] Because such a finding justifies denial of leave to amend, *see Dussouy*, 660 F.2d at 599, the district court did not abuse its discretion by denying Wimm and Speer's motion for leave to file a second amended complaint.

### B

■ Wimm and Speer also appeal the district court's grant of summary judgment as to the negligence, wrongful death, and products liability claims asserted in their First Amended Complaint. The plaintiffs argue that the district court decided the wrong issue when deciding to grant summary judgment. According to the plaintiffs, the dis-

trict court found that pharmacists generally have no duty to warn customers when their doctors prescribe the wrong medication. The plaintiffs argue that the duty owed by pharmacists *generally* was not the issue in this case; rather the district court should have decided whether Eckerd in particular, by way of its advertising or other conduct, undertook a greater duty to warn than is generally owed by other pharmacists. We disagree. Eckerd moved for summary judgment on the claims asserted in Wimm and Speer's first amended complaint, which made no mention of any advertising campaign or of any enhanced duty which Eckerd might have owed. Those allegations were made for the first time in the plaintiffs' second amended complaint, which the district court did not permit to be filed. As a result, those allegations were never before the district court, and the district court was not required to consider them in ruling on Eckerd's motion for summary judgment.

### III

For the foregoing reasons, we AFFIRM.

---

would have risked Rule 11 sanctions by bringing their claims without the benefit of further factual investigation. *See* Fed.R.Civ.P. 11. However, this argument merely begs the question why the plaintiffs failed to conduct discovery regarding their mislabeling and DTPA claims. *Cf. Auster Oil & Gas*, 764 F.2d at 391 (finding that district court abused its discretion in denying leave to amend, where movant "had diligently sought discovery in both state court and [federal court] proceedings"). The plaintiffs suggest that they failed to engage in discovery prior to the filing of Eckerd's motion for summary judgment because they were opposing the removal and transfer of this case from state court in Marshall to federal court in the Northern District of Texas. However, the plaintiffs do not explain how the removal and transfer proceedings prevented them from engaging in discovery concerning their DTPA and mislabeling claims. *Cf. Podlesnick*, 94 F.R.D. at 291 (Where settlement negotiations might have terminated the litigation and made

the amendment unnecessary, those negotiations tended to explain Podlesnick's hesitancy in seeking leave to amend.). Wimm and Speer's explanation for their delay in asserting these claims is unconvincing.

8. The district court found that Wimm and Speer's requested amendment would have been futile, because "the amount of cough syrup given to [Arron] ha[d] been thoroughly investigated and the determination made that [he] did not receive a toxic dose of the cough syrup." Because we affirm the district court's denial of Wimm and Speer's motion on other grounds, we need not decide whether the proposed amendment would have been futile. We note, however, that the district court's underlying assumption— that further discovery would not have revealed that Arron received a toxic dose of cough syrup— is not supported by the record.