Greg **FERGUSON**; and **M.G. Ferguson & Associates, P.A.**, Plaintiffs,

v.

Richard J. **MAITA**, Esquire; Lisa N. Hooper; Alice Cope; Goldstar Mortgage Company, Inc.; Troy Dills; First Greensboro Home Equity, Inc.; Ridgeview Mortgage Associates, Inc.; and Fidelity National Title Insurance Company of New York, Defendants.

No. Civ. 1:99CV225.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 24, 2000.

Edward L. Bleynat, Jr., Asheville, NC, Jeffrey W. Norris, Wolf, Block, Schorr and Solis-Cohen LLP, Philadelphia, PA, John N. Ellison, Anderson Kill & Olick, P.C., Philadelphia, PA, Richard P. Lewis, Anderson Kill & Olick, P.C., New York City, for plaintiffs.

Robert B. Long, Jr., Philip S. Anderson, Long, Parker & Warren, P.A., Asheville, NC, for Richard J. Maita, Lisa N. Hooper, Alice Cope, defendants.

Ervin Ball, Ball, Barden & Bell, P.A., Asheville, NC, J. Scott Taggart, Greenville, NC, for Goldstar Mortgage Co., Inc., Troy Dills, First Greensboro Home Equity Inc., defendants.

David W. Cartner, Asheville, NC, for Ridgeview Mortgage Associates, Inc., defendant.

James W. Williams, Roberts & Stevens, P.A., Asheville, NC, for Fidelity Nat. Title Ins. Co. of N.Y., defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motions to dismiss to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review to

those portions of the recommendation to which specific objections were filed, the undersigned dismisses this case. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

## I. STANDARD OF REVIEW

Defendants have moved to dismiss the complaint for failure to state causes of action upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the Plaintiffs' complaint and must construe those facts in the light most favorable to the Plaintiffs." *Flood v. New Hanover County,* 125 F.3d 249, 251 (4th Cir.1997); Shepard's, *Motions in Federal Court,* § 5.124, at 367 (2d ed.1991). Conclusory allegations are examined in light of the factual claims. *Id.* "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Id.,* § 5.123, at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## II. STATEMENT OF FACTS

Plaintiffs' claims arise from the dissolution of professional and business relationships among the parties. The complaint alleges violations of the federal civil Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1961, *et seq.,* trade name infringement pursuant to 15 U.S.C. § 1125, violations of the state civil RICO statute, N.C.Gen.Stat. § 75D–3, *et. seq.,* and state law claims for breach of contract, conversion, breach of duty, tortious interference with contracts, tortious interference with prospective contracts, unfair trade practices, civil conspiracy, defamation, and intentional infliction of emotional distress.

Defendant Alice Cope was hired as a real estate paralegal by Plaintiff M.G. Ferguson & Associates, PA (the Firm) in 1994. Her job was to conduct title searches for the real estate closings handled by the law firm. On Monday, May 10, 1999, Cope, without prior notice, resigned from employment, stating that she was not happy at the Firm and planned to do free lance work. First Amended Complaint, filed January 21, 2000, at ¶'s 20–21.

Defendant Lisa Hooper was hired as a real estate paralegal on May 16, 1997. She processed loan and closing documents and coordinated the Firm's closings. *Id.,* at ¶ 19. She resigned, also without notice, on May 14, 1999, from the Firm. *Id.,* at ¶ 95.

Defendant Richard Maita, who moved to Asheville from Florida, was hired by the Firm on January 5, 1998, at an annual salary of $43,000. *Id.,* at ¶ 23. It is alleged that Maita frequently demanded salary increases; however, in June 1998, he was offered the opportunity to manage the Firm's real estate department. *Id.,* at ¶ 25. Plaintiff Greg Ferguson alleges that he had developed this department, which accounted for the majority of the Firm's business, over an 11–year period. *Id.,* at ¶ 26. By January 1999, Ferguson designated Maita as the associate managing attorney who was "[p]rimarily responsible for client relationships and for providing services to the clients assigned to them (sic)." *Id.,* at ¶ 30. An employment manual described each of the employees' duties.

The complaint alleges that Maita devised a scheme prior to beginning work at the Firm to move from Florida, where he had formerly practiced law, to Asheville

where he would ingratiate himself at a local firm and then steal its business. *Id.,* at ¶ 36. Once employed at the Firm, Maita embarked on that scheme and enlisted the assistance of Cope and Hooper.

It is alleged that at unspecified times, Maita contacted the Firm's clients and prospective clients, telling them the Firm was not capable of handling their real estate needs and that unidentified persons at the firm used illegal drugs, embezzled funds and engaged in improper lending. *Id.,* at ¶ 45. In January 1999, Maita took an employee of Defendant Ridgeview Mortgage Associates, Inc., to lunch to solicit that company's business for a law firm he was planning to open. *Id.,* at ¶ 46. He paid for the lunch with a Firm credit card, in violation of the Firm's policy that the card be used only for Firm business. *Id.* Moreover, by using the Firm's credit card, Maita allegedly engaged in wire fraud because he was reimbursed by the Firm for the cost of the lunch, although it involved his personal business instead of Firm business. In March and April of 1999, Maita used the same tactics with representatives of Defendant First Greensboro Home Equity, Anderson Mortgage and First Union National Bank, again charging the lunches to the Firm credit card. Id., at ¶'s 51–52, 54, 56, 66, 67. In addition to the lunches, Maita had telephone conversations in May 1999 with representatives of these businesses as well as those from Defendant Goldstar Mortgage Company, Inc. (Goldstar) and others. *Id.,* at ¶'s 72–73. Thus, interstate and other telephone conversations occurred which the Plaintiffs allege constitute wire fraud. *Id.,* at ¶ 97. It is alleged that Defendant Troy Dills (Dills), a Goldstar employee, actually encouraged Maita to begin to do the business of his new firm while still employed by the Ferguson Firm. *Id.,* at ¶'s 73–75. Maita also took the opportunity in May 1999 to de-

fame the Firm to various clients or prospective clients, alleging drug use and embezzlement at the Firm. *Id.,* at ¶ 78.

On certain specified days, Hooper and/or Cope would take paid and unpaid leave from the Ferguson Firm in order to assist Maita in setting up his firm. *Id.,* at ¶'s 48, 60, 65, 68, 70, 71, 76. The three also removed Firm work product, "at least three Ferguson Firm files," personal property such as computer discs containing title opinions and real estate forms and lists of clients and prospective clients of the Firm. *Id.,* at ¶'s 60–61, 69, 83, 85–87. Moreover, these three are alleged on specified dates in May 1999 to have deleted certain files from Firm computers so that it would be difficult to determine which files had been stolen. *Id.*

Before resigning from the Firm, Maita, without Plaintiff Greg Ferguson's approval, sent a new fee schedule for the Ferguson Firm to all of the Firm's clients. *Id.,* at ¶ 80. That schedule showed increased fees to be charged by the Firm for real estate services. *Id.* After leaving the Firm, Maita sent a fee schedule for his new firm to those same clients showing fees lower than those on the new fee schedule for the Ferguson Firm. *Id.* These actions are alleged to have constituted mail fraud.

The complaint also lists a series of real estate closings conducted in May and June of 1999 which were initiated at the Firm but completed by Maita's new firm which kept the fees. *Id.,* at ¶ 91. These closings involved the use of interstate wire services and mail. And, it is alleged that after leaving the Firm, Maita took affirmative actions to conceal his conspiracy to steal the Firm's clients. *Id.,* at ¶'s 93–96. Maita allegedly made untrue statements to the Florida State Bar concerning these matters.[1] *Id.*

---

**1.** Apparently, Ferguson filed a complaint against Maita with the Florida Bar.

As to Defendant Fidelity National Title Insurance Company of New York (Fidelity), it is alleged that it sold title insurance on closings initiated in the Ferguson Firm but completed by the Maita firm. *Id.*, at ¶ 98. It is alleged that Fidelity should have notified the Ferguson Firm that these policies were being issued on closings which had originated at that Firm. *Id.*

## III. DISCUSSION

The Magistrate Judge determined that the federal RICO claims may not survive because Plaintiffs have not shown the requisite continuity of racketeering conduct, predicate acts, and multiple schemes, injuries and victims. For the same reasons, he rejected the Plaintiffs' state RICO claims but found Plaintiffs had stated a claim for a violation of the Lanham Act because Maita used Ferguson Firm letterhead to make the inflated fee schedule. State law claims would remain in the action as supplemental claims. Both Plaintiffs and Defendants object to certain findings by the Magistrate Judge.

The undersigned is compelled to note that the complaint, which is 69 pages long containing 225 paragraphs, is anything but a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a). It is often redundant, vague and conclusory and follows no logical or chronological pattern. Nonetheless, it has been scrutinized to ascertain whether this dispute truly rises to the level of "a federal case."

As did the Magistrate Judge, the undersigned will first address those claims on which federal jurisdiction is based. Plaintiffs' federal RICO claims are based on 18 U.S.C. § 1962(c) which provides that it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate

. . . in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." This section "makes it illegal to *engage* in racketeering activity. Section 1964(c) provides a person with a civil remedy for injuries to business or property from violations of Section 1962." *Semiconductor Energy Lab. Co. v. Samsung Electronics*, 204 F.3d 1368, 1379 (Fed.Cir. 2000). Plaintiffs claim that the racketeering activity at issue is mail and wire fraud. The "persons" are alleged to be each of the Defendants and the "enterprise" is alleged to be "an association-in-fact" of all the Defendants in Count I and the "Maita firm" in Count II. The pattern of racketeering activity is alleged to be as set forth in the findings of facts *infra*.

> To prove a violation of § 1962(c), [Plaintiffs] must show that *each* RICO defendant conducted an enterprise through a pattern of racketeering activity and that [Plaintiffs] [were] injured in [their] business or property as the result of such conduct. . . . Initially, [Plaintiffs] must show an enterprise, which is defined as an ongoing organization, formal or informal, in which the various associates function as a continuing unit. *The enterprise must be distinct from the persons alleged to have violated § 1962(c).*

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (citations omitted) (emphasis added); *Semiconductor Energy Lab.*, 204 F.3d at 1383 n. 7. The Fourth Circuit has held, for purposes of a civil RICO claim, that a union is not distinct from the officers, directors, and employees thereof. *New Beckley Mining Corp. v. Int'l Union, UMWA*, 18 F.3d 1161, 1163 (4th Cir.1994). Likewise, the union could not state a RICO claim against the mine owner and its officers because they were not distinct from the alleged enterprise. *Id.*, at 1165.

■ Here, Plaintiffs have alleged that all of the Defendants formed an association-in-fact and at the same time were "persons" for purposes of the RICO statute in Count I. The "association-in-fact" or "enterprise" is not distinct from the "persons" alleged to have violated the statute. *Id.* The same reasoning applies to Count II in which the "enterprise" is alleged to be the Maita firm, which of course, was founded by Defendant Richard Maita, employs Defendants Cope and Hooper, and does business with the other named Defendants. *Id.*

■ The Court also rejects the Plaintiffs' objections to the Magistrate Judge's finding that they failed to allege a pattern of racketeering activity.

> To state a claim under civil RICO, [Plaintiffs] must allege at least two acts of racketeering that form a pattern of racketeering activity. Alleging two of these "predicate" acts is not in itself sufficient to satisfy the "pattern of racketeering" requirement; rather, a plaintiff must allege a continuing pattern and a relationship among the defendant's activities *showing they had the same or similar purposes.* Continuity may be established by showing that "predicate acts or offenses are part of an ongoing entity's regular way of doing business." The relationship criterion may be satisfied by showing that the criminal acts "have the same or similar purposes, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." ... Though [Plaintiffs] alleged more than the two minimum predicate acts required to state a RICO claim, "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.' "

*Anderson v. Foundation for the Advancement, etc., of American Indians,* 155 F.3d 500, 505–06 (4th Cir.1998) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)) (other citations omitted; footnote omitted) (emphasis added). The Defendant mortgage companies are alleged to have stopped using the legal services of the Ferguson Firm and to have transferred their business to Maita. Defendant Dills is alleged to have encouraged Maita to begin doing legal work for his new firm while still employed by the Ferguson Firm. Fidelity is alleged to have issued title insurance to Maita. These acts simply do not meet the relationship test. It is not an illegal relationship to do business with a competitor of the Ferguson Firm who offers lower fees. Nor is it an illegal relationship to listen to an employee of the Ferguson Firm who expounds on his ability to do better work at a lower fee. While Dills' "encouragement" may have been less than honorable, it was Maita who embarked on the performance of legal services to his "new" clients while still at the Ferguson Firm. And, as to Fidelity, there is no manner in which that organization would or should have known that closings for which it issued title insurance had originated in the Ferguson Firm. The acts alleged to have been done by these Defendants do not show that *each* Defendant conducted an enterprise through a pattern of racketeering activity. *Palmetto, supra.*

> [The Fourth Circuit is] cautious about basing a RICO claim on predicate acts of mail and wire fraud because " '[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.' " This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activi-

ty. We have reserved RICO liability for "ongoing unlawful activities whose scope and persistence *pose a special threat to social well-being.*" [T]his case is not sufficiently outside the heartland of fraud cases to warrant RICO treatment. The main predicate acts here were mail and wire fraud ... and there was only one victim of the fraud. There is no *per se* rule against a RICO claim involving only one victim. However, the narrow focus of the scheme here—essentially a dispute between formerly close [legal and business associates]—combined with the commonplace predicate acts persuades [the Court] that the facts here do not satisfy the pattern requirement.

*Al–Abood v. El–Shamari*, 217 F.3d 225, 238 (4th Cir.2000) (quoting *Anderson*, 155 F.3d at 506 and *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir.1989)) (other citations omitted) (emphasis added).

■ Moreover, as the Magistrate Judge noted, the use of a firm credit card to "wine and dine" potential clients was not wire fraud because the credit card company was not defrauded. *Semiconductor Energy Lab.*, 204 F.3d at 1380 ("**In this case, however, the [credit card company] has not been defrauded of property.**").

At its essence, this case is a dispute between Ferguson and Maita involving the alleged theft of business. It simply does not "pose a special threat to social well-being." *Al–Abood, supra.* Moreover, "Congress enacted RICO ... for the purpose of 'seek[ing] the eradication of *organized crime* in the United States.'" *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 1611, 146 L.Ed.2d 561 (2000) (quoting Pub.L. 91–452, 84 Stat. 922, 923 (1970)) (emphasis added). The conduct alleged here certainly does not rise to the level of organized crime. Thus, Supreme Court and Fourth Circuit precedent preclude a civil RICO claim on these facts. As a result, it is unnecessary to address the Plaintiffs' objections to the remainder of the Magistrate Judge's findings.

Plaintiffs also object to the Magistrate Judge's recommendation that the federal RICO conspiracy claims be dismissed. Section 1962(d) of Title 18, United States Code, provides that it is unlawful "for any person to conspire to violate" § 1962(c). Since the undersigned has concluded that the Defendants' conduct did not amount to a pattern of racketeering activity, the conspiracy claim also fails. *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1120 (D.C.Cir.1991) (The conspiracy claim falls with the § 1962(c) claim.). Moreover, because the enterprise is not distinct from the persons involved, no conspiracy claim is stated. *New Beckley Mining, supra.* Although the Plaintiffs may have been injured, it was not as a result of a pattern of racketeering activity. *Beck, supra.* "[A] person may not bring suit [under the RICO statute] for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." *Id.*, 120 S.Ct. at 1617.

■ Plaintiffs also assert a cause of action based on the Lanham Act, which if properly pled, would achieve federal jurisdiction. In support of this claim, the amended complaint simply realleges all of the other paragraphs of the complaint, again violating Rule 8. Only by referring to the Plaintiffs' response to the Defendants' motion to dismiss is the undersigned able to ascertain that this claim is based on Maita's modification of the Ferguson Firm's fee schedule. Plaintiffs claim that by doing so, Maita violated the Lanham Act by engaging in false advertising. However, before false advertising may be shown, it must be shown that the name of Plaintiffs' law firm was protected under the Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120

L.Ed.2d 615 (1992) (**The Lanham Act's prohibition against false advertising protects** *qualifying* **unregistered trademarks, trade names, or trade dress.**).

Maita allegedly distributed an inflated schedule of fees on the Plaintiffs' letterhead which contained the name "M.G. Ferguson & Associates, P.A." "Personal names (surnames and first names) have been placed by the common law into that category of non-inherently distinctive terms which require proof of secondary meaning for protection. Thus, since personal names are not regarded as being inherently distinctive marks, they can be protected as trademarks only upon proof that through usage, they have acquired distinctiveness and secondary meaning." 2 *McCarthy on Trademarks*, § 13:2 (4th ed.2000); *accord, Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121 (4th Cir.1990). Neither distinctiveness nor secondary meaning has been alleged.

Although not alleged, it is possible that Plaintiffs claim the name "M.G. Ferguson & Associates, P.A." is a trade name. A trade name is "any name used by a person to identify his or her business or vocation." 15 U.S.C. § 1127. "[P]ersonal names that are used as names of business and corporate organizations require proof of secondary meaning for legal protection, as do trademarks." 1 *McCarthy on Trademarks*, § 9:2. Again, such has not been alleged.

The undersigned has been unable to find any law, substantive or statutory, (nor has any been cited) protecting the name of a law firm under the Lanham Act.[2] Nor is the undersigned inclined to extend the reach of the Lanham Act to the factual scenario alleged here, absent citation to supporting law. Inasmuch as any claim which possibly could be stated has not been adequately alleged, this claim as well will be dismissed.[3]

The remaining causes of action are the state law claims for violations of the state civil RICO statute, N.C.Gen.Stat. § 75D–3, *et seq.*, breach of contract, conversion, breach of duty, tortious interference with contracts, tortious interference with prospective contracts, unfair trade practices, civil conspiracy, defamation, and intentional infliction of emotional distress. Because those claims over which this Court has original jurisdiction are dismissed, the undersigned will decline to exercise supplemental jurisdiction over the remaining claims.[4] Thus, contrary to the Magistrate Judge's recommendation, the undersigned will not address the state RICO claim.

## IV. MOTION TO AMEND

After the Magistrate Judge filed his Memorandum and Recommendation, Plaintiffs moved to amend their complaint for a second time. The proposed amendment seeks to correct allegations upon

---

2. *McCarthy on Trademarks* contains a citation to a California state court decision in which the court enjoined a partner who had left a law firm from using its name. 1 *McCarthy on Trademarks*, § 9:6 (4th ed.2000). However, that decision was not based on the Lanham Act.

3. Plaintiffs cite cases in response to the Defendants' motions in which there was no issue as to whether the trademark or trade name qualified for protection. They are, thus, inapposite.

4. It is noted, however, that had the state law claims remained, the claim for intentional infliction of emotional distress would have been dismissed. The conduct alleged here simply does not rise to the level required to state such a claim under North Carolina law. *Poston v. Poston*, 112 N.C.App. 849, 851, 436 S.E.2d 854, 856 (1993); *McKinney v. Avery Journal, Inc.*, 99 N.C.App. 529, 393 S.E.2d 295 (1990).

which the Magistrate Judge relied in recommending dismissal of the civil RICO claims. Moreover, Plaintiffs now seek to add claims for computer fraud under both federal and state statutes and a common law claim for fraud. These new claims, however, are based on factual allegations contained in the original complaint and, thus, known to Plaintiffs when the action was first filed.

This suit was begun on October 28, 1999, and was promptly met with motions to dismiss. While those motions were pending, Plaintiffs filed an amended complaint on January 21, 2000. Fed.R.Civ.P, 15(a) **(allowing amendment without leave of court prior to the time that a responsive pleading has been served.).** Thus, in the almost one year period since the action was begun, it has not progressed beyond the posture of the initial motions to dismiss; yet, Plaintiffs now seek to amend a second time to add claims which should have been apparent at the time of the first amendment, or earlier. It is telling that the federal claim for computer fraud is now sought to be added because that claim would restore federal jurisdiction. Although Plaintiffs claim the amendment simply adds allegations which have occurred subsequent to the first amended complaint, the factual allegations supporting a claim for computer fraud are the same ones as originally pled.

In Count VII of the proposed second amended complaint, Plaintiffs allege that Defendants Maita, Cope and Hooper "knowingly exceeded their authorized access to the computer(s) of the Ferguson Firm by removing and/or deleting computer data from the Ferguson Firm related to the Ferguson Firm's real estate closing practice" in violation of 18 U.S.C. § 1030(a)(4). **Exhibit A, *attached* to Plaintiffs' Motion for Leave to File a Second Amended Complaint, at 64.** These allegations were contained in the original and amended complaints; it is only the addition of a new legal theory which is different.

Although delay alone is insufficient reason in this Circuit to deny leave to amend, delay accompanied by bad faith is not. *International Paper Co. v. Schwabedissen Maschinen & Anlagen,* 206 F.3d 411, 420 (4th Cir.2000). Where the facts upon which the new claim are based were known at the time of the original complaint, and indeed, pled in that complaint, it is not an abuse of discretion to find bad faith. *Id.* Moreover, where the motion to amend is predicated on a lack of success in the litigation, such as the Memorandum and Recommendation, leave to amend need not be granted. *Id.*

> Under Federal Rule of Civil Procedure 15(a), pleadings may be amended once as a matter of course before a responsive pleading is served, and thereafter by leave of court. The rule provides that such leave "shall be freely given when justice so requires." "However, it is by no means automatic." In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.

*Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993) (citations omitted). Despite having amended the complaint once before, Plaintiffs seek to add this new cause of action only after facing the possibility that no federal jurisdiction would be found. *Id.,* at 139–41 **(noting the motion for leave to add new claim came about in an effort to avoid summary judgment).** The Plaintiffs are not entitled to litigate their case *seriatim. Id.* Moreover, no reason has been cited by them for the delay. *Id.* Indeed, they do not dispute

they have been aware of the facts on which this claim is based since prior to filing the original complaint. *Id.; accord, Matter of Southmark Corp.,* 88 F.3d 311, 316 (5th Cir.1996). The undersigned is compelled to find, on these facts, that the Plaintiffs have not been diligent and have made this motion in bad faith.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motions to dismiss are hereby **GRANTED,** and the federal claims are hereby **DISMISSED** with prejudice; and

**IT IS FURTHER ORDERED** that the undersigned declines to exercise supplemental jurisdiction over state law claims; and

**IT IS FURTHER ORDERED** that the Plaintiffs' motion to amend the complaint is hereby DENIED.

A Judgment is filed herewith.