Jack HEMINGWAY, JBS Packing, Inc., Shawn Tran, Kelly Tran Cross, Bao Tran, Bay Nguyen, Lai Ha and Andy Dung Thien Le, Plaintiffs,

v.

The VESSEL STAR SAVANNAH, her engines, tackle, equipment and furnishings, in rem, Trilines Shipping, Inc., Magsaysay Lines, Inc., Magsaysay Maritime Corporation and Fairmont Shipping (Canada) Ltd., in personam, Defendants.

No. Civ.A. 1:00CV124.

United States District Court,
E.D. Texas,
Beaumont Division.

March 23, 2001.

Geoffrey Clark Guill, Baytown TX, for plaintiff.

Mark A Freeman, Stevens Baldo & Freeman, Beaumont TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the Court is Plaintiffs' Motion for Leave to File Amended Pleading [13] and Plaintiffs' Motion to Increase Security Pursuant to Rule E(5)(a)[16], and the Court having reviewed the motions and responses on file is of the opinion that the motions be DENIED.

## I. Background.

This action was originally filed in the United States District Court for the Southern District of Texas, Galveston Division, on November 24, 1999, invoking Admiralty jurisdiction (civil action docket number G–99–719). On motion of various defendants, venue was transferred to this court on February 15, 2000, and the current docket number assigned. On December 20, 2000, a case management conference was conducted between the Court and counsel for all remaining parties. The motions at hand are based on the following facts.

On November 27, 1997, the Motor Vessel (M/V) STAR SAVANNAH departed dock in Port Arthur, Texas, under tug control, en route Port Neches, Texas. While maneuvering in the restricted waters of Port Arthur, with the vessel intending to proceed under its own power, the two tugs were cast off to avoid one or both of them being swept under the vessel's stern to a dangerous position relative to its propeller and rudder. However, the state pilot onboard M/V STAR SAVANNAH was unable to control the vessel, apparently due to insufficient flow of water through the propeller and over the rudder. The vessel was wind-blown to an allision with two moored fishing vessels and with the dock belonging to Plaintiffs Jack Hemingway and JBS Packing, Inc.

Defendants' counsel hired Sabine Surveyors, Inc., to conduct a joint damage survey, without prejudice, of the JBS Packing shrimp dock. That survey was attended by Mr. C. Brannon of JBS Packing, according to the survey report. On December 2, 1997, the initial survey was conducted, assumedly of the topside or above-water areas of the dock. On April 9, 1998, an underwater survey of the southeast corner of the dock was conducted. In a report dated October 19, 1998, Sabine Surveyors published its findings as to the damage to the dock and rendered its estimate of costs to repair said damage. Its overall estimate of cost to repair was $4,000.00. The report contained the statement, "Damages as enumerated above could reasonably be attributed to vessel contact as reported." It was distributed to all parties.

The original November, 1999 complaint included claims by the owners of the fishing vessels damaged in the allision and by Mr. Hemingway and JBS Packing. A security bond was imposed against defendants in the amount of $225,000.00 in accordance with Rule E(5)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. The fishing vessel claims were subsequently settled and those plaintiffs' claims were dismissed in an Order signed July 21, 2000. Mr. Hemingway and JBS Packing are the sole remaining plaintiffs. The JBS dock apparently continued to be in use by fishing vessels following the allision despite the damage it incurred.

After dismissing the fishing vessel claims, the outstanding monetary claim by the remaining plaintiffs was $50,000.00, as stated in paragraph 24 of the original complaint. In a motion brought August 7, 2000, defendants sought a reduction in security to $75,000.00. They did so based on the custom in admiralty in Southeast Texas of imposing security in the amount of one and one-half times the amount of the claimed damages. That motion was unopposed by plaintiffs. During the December 20, 2000, management conference, counsel for plaintiffs agreed that the claim for $50,000.00 appeared to be correct and did

not object to the defendants' motion to reduce security. The plaintiffs had not, at that time, presented evidence supporting the amount of the claim but indicated that it was "not a large case." This Court granted the motion to reduce security to $75,000.00. The parties further agreed that there was essentially no other discovery to be had except possibly deposing expert witnesses. Although the parties believed they would be able to settle the claim, they asked for a trial date to be set and this Court set April 9, 2001 as the date for docket call for a bench trial.

Plaintiffs Hemingway and JBS Packing have now submitted a report of a survey dated January 31, 2001, which describes more extensive damage to the dock than previously identified, along with three bids for repair ranging from $134,685.00 to $159,200.00. The newly reported damage includes: 1) Seven–Pile Dolphin; 2) Three–Pile Dolphin; 3) Corner between New Dock and Slip; 4) New Dock; 5) Fendering System; and 6) Original Dock. Plaintiffs seek leave to amend their original complaint, by a motion entered March 12, 2001, to claim damages in the amount of $200,000.00. In another motion entered March 19, 2001, the plaintiffs seek to have security against M/V STAR SAVANNAH and the defendants reinstated to $225,000.00.

## II. Rule 15 and Amending Complaints.

Rule 15(a) governs amendments to pleadings. In pertinent part, it states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *See* FED. R.CIV.P. 15(a).

■ The United States Supreme Court has reiterated the requirement to freely allow such amendments when the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, the U.S. Supreme Court qualified the requirement to do so by further stating,

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.; Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir.1993). Further, it is within a district court's exercise of discretion to grant or deny an opportunity to amend, though outright refusal to grant the leave without any justifying reason is an abuse of discretion. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1302–03 (5th Cir.1995).

■ Defendants refuse to consent for plaintiffs to amend their complaint; instead, they object to such amendment on the bases of undue delay on the part of the plaintiffs and undue prejudice which would accrue to the defendants if the plaintiffs' motion were to be granted "on the eve of trial." This Court agrees.

Plaintiffs point out that delay, alone, is insufficient reason to deny leave to amend. That may be true, particularly if the plaintiffs were engaged in an ongoing or difficult and lengthy effort to uncover their true damages or other facts bolstering the merits of their claim. There has been no such apparent ongoing effort here. Despite having been present during the defendants' joint/without prejudice survey which was commenced five days after the allision and which continued through the ensuing four months or so, plaintiffs did not conduct a similar survey until considerably closer to trial. The precise dates that the plaintiffs' survey by Albert M. Koehler, P.E., was conducted are not revealed in the plaintiffs' motion nor in the survey report itself. However, the fact that the survey was dated January 31, 2001, and included three bids for repair which were dated January 15, 2001 (Orion Construction, Inc.), January 22, 2001 (Tom–Mac, Inc.) and January 25, 2001 (R.L. Eldridge Construction, Inc.) leads this Court to the conclusion that the survey was conducted very late in the game.

The report also confirmed that the dock has been in continued use since the allision and explained that the request for bids specified that repairs must be completed within twelve days of their commencement to minimize inactivity at the dock.

Although delay alone may be insufficient to deny leave to amend, undue delay on the part of the movant is sufficient to deny. "Liberty in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time." *See Southmark Corp. v. Schulte Roth & Zabel,* 88 F.3d 311, 315 (5th Cir.1996) (quoting *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025 (5th Cir.1981)). A district court may properly consider, within its exercise of discretion, (1) an "unexplained delay" following an original complaint and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed. *See Southmark,* 88 F.3d at 316.

The plaintiff in *Southmark* knew of the facts leading to its motion for leave to amend since before the original complaint was filed. That plaintiff's motion for leave was filed thirty-eight months after the issue of litigation occurred, twenty-four months after a report on the issue was filed with details and legal implications, and thirteen months after the original complaint was filed. The Fifth Circuit upheld the district court's discretion in denying leave to amend in that case. *Id.* Here, plaintiffs were present during the initial joint survey of the pier which was completed in April 1998 and formally reported in October 1998. Although plaintiffs may not have been aware of the full extent of the damage to the JBS dock at that time, they were certainly placed on notice of the surveyed estimate of damage and repair long before the complaint was filed in November, 1999, twenty-four months after the allision occurred. Any disagreement should have led to a supplementary survey at that time. Instead, they delayed their survey until sometime late in 2000 or early in 2001, roughly thirty-six months after the allision produced the damage to the dock. They have made no explanation for such a lengthy delay. Plaintiffs then entered their motion for leave to amend in March, about forty months after

the cause of the damage and about sixteen months after the original complaint. All during that time, the dock continued to be used by shrimp boats serviced by JBS Packing. The likelihood that more damage or cumulative wear and tear occurred to the dock by that usage and the normal passing of time renders the report offered by the plaintiffs suspect. That constitutes undue delay.

Further, entering a motion for leave to amend after discovery has been completed and on the eve of trial also constitutes undue delay sufficient to deny such a motion. *See Daves,* 661 F.2d at 1025 (motion for leave to amend original complaint on the day of trial denied as an undue delay). In this case, the Court ordered discovery to be complete by March 23, 2001. However, the plaintiffs agreed that there was little discovery to be had during the December 20, 2000, case management conference and led the Court and defendants to believe that the claim to be litigated would be in the expected $50,000.00 range. The fact that we are now within three weeks of trial after forty months of time to prepare is very nearly the same thing as being on "the eve of trial."

In terms of undue prejudice, plaintiffs assert that defendants may still defend their case without prejudice regardless of an amendment to plaintiffs' claimed damages. That is wrong on two counts. First, the defendants were not included as participants in the January, 2001 survey. That report was not provided to defendants until late February, 2001. It produces complex observations, conclusions, estimates, and photographs which the defendants may find difficult to challenge based on having so little time to prepare. The extent of the surveyed damage was known as early as January 8, 2001, which was the date of the Request for Proposal for Repair of Dock (Exhibit "A" to plaintiff's motion to increase security). This Request for Proposal included detailed descriptions of the damage. The eight week delay between that date and the date plaintiffs' motion for leave to amend was entered further prejudices the defendants' ability to prepare for trial. Second, the defendants would be prejudiced by granting leave to amend because they would be subject to the

very action plaintiffs seek in their next motion. Defendants were able to obtain a sizable reduction in the security imposed on them and the *M/V STAR SAVANNAH* by virtue of the plaintiffs' agreement that their claim was only in the $50,000.00 range. Defendants did so at some cost of legal expenses. Granting leave to amend the amount of the claim now would land a significantly higher security burden on the defendants without having had the opportunity to dispute the later survey.

Finally, during the December 20, 2000, case management conference, plaintiffs indicated only that they were still trying to find blueprints for the dock and were trying to reach an agreement on the amount of damages. Without imputing any dilatory motive, the fact that a survey of this complexity and magnitude was not identified, described, or even mentioned as contemplated during that conference is troubling.

On all these bases and in the discretion of the Court, plaintiffs' motion for leave to amend is denied.

### III. Rule E(5)(a) and Imposition of Security Bond.

Since the Court has denied leave to amend plaintiffs's original complaint, and the amount of security was properly fixed at $75,000.00 by the agreement of the parties in December, 2000, plaintiffs' motion to increase security is likewise denied.

### IV. Conclusion.

For all these foregoing reasons, it is, therefore,

ORDERED, that Plaintiffs' Motion for Leave to File Amended Pleading is hereby DENIED.

ORDERED, that Plaintiffs' Motion to Increase Security is hereby DENIED.