**David MASINTER, Plaintiff–Appellant,**

**v.**

**TENNECO OIL CO., et al., Defendants**

**Liberty Mutual Ins. Co., Intervenor–Appellee,**

**Marlin Drilling Co., Inc., Defendant–Appellee.**

**No. 90–3265.**

United States Court of Appeals, Fifth Circuit.

·April 22, 1991.

---

James E. Uschold, Robert L. Hackett, Oestreicher, Whalen & Hackett, New Orleans, La., for plaintiff-appellant.

John K. Leach, Christovich & Kearney, New Orleans, La., for intervenor-appellee.

Thurl Stalnaker, Jr., Edward J. Koehl, Jr., New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, and RONEY [1] and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

We are revisited by this case to determine whether the district court erred in finding the testimony of defendants/appellees' economist more credible than that of plaintiff/appellant's economist. We conclude that the district court was not clearly erroneous in using the future lost wage calculations of defendants/appellees' expert. However, we also here modify the district court's judgment to allow interest on the awards for past lost wages and past pain and suffering from the date of first judgment.

## FACTS AND PROCEEDINGS IN THE DISTRICT COURT

Plaintiff/appellant Masinter initially sued several defendants, including Marlin Drilling Company (Marlin), to recover damages for injuries sustained while working as a sales/service representative for Hydril Company aboard a jack-up rig owned by Marlin. On first appeal, we affirmed the district court with respect to liability, past lost wages, and pain and suffering, but vacated the court's award of future lost wages. *Masinter v. Tenneco Oil Company*, 867 F.2d 892 (5th Cir.1989). We then gave Masinter the option of accepting a remittitur reducing his award to $84,-527.40, including future lost wages of $60,-487.00, or having a new trial on the issue of future lost wages. He chose the latter. As a result, a second judgment was entered in Masinter's favor for $84,527.40 with in-terest from the date of the second judgment. This appeal followed.

## DUELING ECONOMISTS

Masinter contends that the method of calculating future lost wages used by his expert, Dr. Wolfson, was correct, while the method used by Marlin's expert, Dr. Boudreaux, upon which the district court relied, was speculative. To calculate the "future wage loss" Dr. Wolfson attempted to calculate actual lost wages from the date of the first trial to the date of the second trial, and then added future lost wages thereafter. He calculated earnings for the period between trials by using Masinter's gross earnings less work expenses and taxes. This total was then subtracted from appellant's estimated unimpaired earnings. Lost wages from the second trial into the future were then calculated by setting an earnings base, derived from Masinter's actual earnings at the time of the accident, and adjusting it to determine an income stream. Dr. Wolfson's adjustments included noninflationary factors [2] and a tax discount rate. After projecting this figure, Dr. Wolfson subtracted Masinter's expected earnings in his disabled state. However, these calculations were based on speculation that the district court determined to be unsupported by the evidence. Specifically, Dr. Wolfson assumed that Masinter would remain employed with Hydril despite the fact that it underwent massive layoffs.[3] His calculations also presumed that Masinter would continue to incur future wage loss through the age of 70. Although his calculations applied a significant discount figure in Masinter's later years, we are not persuaded.[4]

---

1. Circuit Judge of the Eleventh Circuit, sitting by designation.

2. The factors include (1) effects of age on earnings, (2) manufacturing and personal productivity, (3) employability, and (4) life expectancy.

3. After his accident, Masinter returned to work for Hydril in a different capacity until he was laid off. However, it is not clear that he would have been able to maintain his old position regardless of the accident. Hydril underwent a 90 percent reduction of its personnel between 1979 and 1988 including a reduction from 11 to 2 sale/service representatives. Some of the personnel laid off had more seniority than Masinter.

4. Recognizing the inherent speculative nature of "future wage loss", we nonetheless must make such determinations in order to accord a degree of justice. However, we believe that the large discount figures built into Dr. Wolfson's calculations of Masinter's last employable years are more illustrative of their speculative nature than of their exactness.

The record also reveals that Dr. Wolfson's assumptions of fringe benefits were not appropriately supported. Again we are not persuaded that Masinter would have been retained by Hydril, and even if he had remained, the record does not support the assumption that his fringe benefits would still exist.[5]

"[C]redibility choices and the resolution of conflicting testimony are within the province of the court sitting without a jury, subject only to the clearly erroneous rule." *Rodriguez v. Jones*, 473 F.2d 599, 604 (5th Cir.), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). Fed.R.Civ.P. 52(a) ("Due regard shall be given to the opportunity of the trial court to judge of [sic] the credibility of the witnesses."). *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). The district court's decision not to use Dr. Wolfson's calculations was not clearly erroneous because an award for damages cannot stand when the evidence to support it is speculative or purely conjectural. *In re Air Crash Disaster at New Orleans, LA.*, 795 F.2d 1230, 1235 (5th Cir.1986); *Haley v. Pan American World Airways, Inc.*, 746 F.2d 311, 316 (5th Cir.1984).

■ Appellant contends that his supervisor at Hydril, who did not testify because he was not listed on the pretrial order, would have offered evidence supporting his lost fringe benefit claims as well as his retained employment with Hydril. However, the district court did not abuse its discretion in declining Masinter's untimely request to call him as a witness. Any decision not to modify a pretrial order is a matter of trial court discretion. *See Davis v. Duplantis*, 448 F.2d 918 (5th Cir.1971). We will not interfere with such a decision absent a showing of abuse of discretion. *See Jordan v. Clark*, 847 F.2d 1368 (9th Cir.), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1988); *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 842 F.2d 1466 (3rd Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988); Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 1526 (1990). "The order following the pretrial conference shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e). Whether the supervisor's testimony would have been sufficient to support the basis for Dr. Wolfson's calculations is unclear,[6] and consequently its absence cannot be said to have resulted in manifest injustice.

■ Masinter argues that calculations of Marlin's expert, Dr. Boudreaux, were speculative because they included an across-the-board reduction of Masinter's earnings base by 25 percent due to unfavorable economic and employment conditions in the oil industry. We have held that evidence concerning the economic conditions in the oil industry is relevant to determine to what extent an injured person will suffer future losses. *Masinter I*, 867 F.2d 892 (5th Cir. 1989); *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1461 (5th Cir.1987). In light of the general condition of the oil industry, and specifically the condition of Hydril, the district court did not err in considering Dr. Boudreaux's 25 percent reduction in earnings figure to be reasonable.[7] The fact that Dr. Boudreaux did not use the actual wage loss between trials does not impeach

---

**5.** As discussed previously, Dr. Wolfson's method of calculating "future wage loss" breaks down into two parts. He incorporates Masinter's (1) actual wage loss between trials, and (2) discounted wage loss figures thereafter. However, his lost wage determination in both parts is based on the unsupported assumption that Masinter would have been retained by Hydril. Consequently, we need not decide whether the first part of his method is appropriate when a case has been remanded for future wage loss calculations only, because, regardless of the method's validity, Dr. Wolfson's use of unsupported assumptions taints his result.

**6.** The same supervisor's testimony in *Masinter I* indicates that he did not control or participate to any significant extent in the layoff of Hydril's sales/service representatives.

**7.** On cross-examination Dr. Boudreaux admitted that he derived the figure by viewing the industry in general and Hydril in particular. We recognize that the figure is an estimated one but we believe it to be reasonable if not conservative. Consequently, we also note that the use of work-life expectancy tables in conjunction with the 25 percent discount figure does not render unrealistic the lost future wages calculated.

his conclusions as a matter of law. The appellant has cited no authority legally requiring that there be factored into the calculation actual wages received between a trial and a retrial, figures not available when the case was originally remanded.

■ Next, Masinter argues that the discount rate of 5.75 percent applied by Dr. Boudreaux to reduce the award of future lost wages to present value was excessive. Masinter correctly notes that the discount rate accepted by the district court in the case at bar was greater than the range of 3 to negative 1.5 percent we described in *Culver v. Slater Boat Co.*, 722 F.2d 114, 121 (5th Cir.1983) (*en banc*) (*Culver II*). However, in *Culver II* we did not mandate any specific discount rate. Instead we explained that parties may introduce expert opinion concerning the appropriate rate. *Id.* at 122. Accordingly, appellee correctly introduced Dr. Boudreaux's testimony.[8] We conclude that the district court's decision to use the 5.75 percent discount figure was supported by the record and was not clearly erroneous.

### INTEREST

■ Federal Rule of Appellate Procedure 37 provides:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date judgment was entered in the district court. If a judgment is not modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest.

Following this rule, we conclude that interest on Masinter's judgment representing past lost wages and pain and suffering, affirmed in *Masinter I*, should run from the date of judgment in the first trial. Accordingly, we here modify the district court's decision to reflect this change. However, we leave untouched the district court's decision to allow interest on future lost wages only from the date of the second judgment. In *Masinter I*, we vacated the judgment as to future lost wages but did not provide in our mandate instructions with respect to the allowance of interest. In *Vickers v. Chiles Drilling Co.*, 882 F.2d 158, 159 (5th Cir.1989) (citing Fed.R.App.P. 37) we stated that "[i]f an appellate court reverses or modifies a judgment with a direction that a judgment be entered against a party, the mandate from the appellate court must specifically order that interest run from the date of the first judgment, else interest runs from the date of the second, modified judgment." We now conclude that, without an order that interest on the future lost wages runs from the date of the first judgment, it should here run from the date of the second judgment. *See Riha v. International Telephone & Telegraph Corp.*, 533 F.2d 1053, 1054–55 (8th Cir.1976) (where the Court of Appeals vacated an award of damages and directed the district court to enter a judgment in a fair and proper amount, plaintiff was entitled to interest from the date that the district court entered its judgment on remand, and not from the date of the original judgment). We believe our decision to be consistent with Rule 37 and the rationale supporting *Vickers*.

Accordingly, we modify the district court's judgment to include interest from the date of the first judgment on past lost wages and on pain and suffering. We affirm in all other respects.

MODIFIED IN PART and AFFIRMED IN PART.

---

8. Dr. Boudreaux explained that he took an 8.25 percent interest rate on treasury bills and subtracted 2.5 percent and 5.5 percent as his estimate of inflation to reach a discount rate between 2.75 percent and 5.75 percent.