United States Court of Appeals,

Fifth Circuit

No. 93-8031

Fred STARLING and Bonnie Starling,

Plaintiffs-Appellants, Cross-Appellees, Appellees,

v.

Charles FULLER, et al.,

Defendants-Appellees,

and

Jim Boutwell and Williamson County, Texas,

Defendants-Appellees, Cross-Appellants,

and

James Ludlum,

Appellant.

Appeal from the United States District Court
for the Western District of Texas.

April 5, 1995

Before GARWOOD and EMILIO M. GARZA, Circuit Judges, and HEAD[*],
District Judge.[**]

HAYDEN W. HEAD, Jr., District Judge:

Fred and Bonnie Starling appeal from a jury verdict finding in

favor of the defendants. Specifically, they challenge the

following of the district court's orders: (1) an order denying

---

[*]District Judge of the Southern District of Texas, sitting by
designation.

[**]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

leave to file a sixth amended complaint;  (2) an order striking the parties' second joint pretrial order, filed in 1992;  (3) an order denying leave to file a trial amendment of the joint pretrial order;  (4) an order excluding the testimony of Jerry Shorten, one of plaintiffs' witnesses;  (5) an order allowing Paul Womack, an unlisted defense witness, to testify;  and (6) the court's jury instructions.  Sheriff Boutwell and Williamson County cross-appeal, challenging the district court's award of sanctions against them and their attorney, James Ludlum.  Ludlum also challenges that award in his own appeal.  We affirm the district court's orders except as to the fee awarded to lift the bankruptcy stay.

*I. THE STARLINGS' APPEAL ON THE MERITS*

*A. Facts and Proceedings Below*

Charles Elkins, Fred Starling's landlord, obtained a civil judgment against Starling in the amount of $1,436.50.  Elkins requested a writ of execution, which was issued on February 3, 1988.  In order to execute that writ, Williamson County Constable Charles Fuller went to a pawnshop owned by Starling.  When Fuller attempted to serve the writ on Starling, Starling became quite angry.  Though there is some dispute as to the exact words used by Starling, Fuller testified that Starling threatened to shoot him if he attempted to take anything from the store in execution of the writ.  Starling claims that Fuller became angry when he saw that Starling was supporting Fuller's opponent in an upcoming election.

Fuller reported the substance of the encounter to Sergeant

Ruby Johnson, the civil warrants officer at the Williamson County Sheriff's Department. Because Sergeant Johnson believed Starling's threat violated the criminal laws, she summoned the officer in charge of criminal matters, Sergeant Dennis Jaroszewski. Sergeant Jaroszewski took Fuller's statement and ordered Deputy David Proctor to prepare a criminal complaint against Starling. Fuller brought the complaint to a Justice of the Peace, who issued a warrant for Starling's arrest for aggravated assault on a law enforcement officer and set bond in the amount of $25,000.00.

Upon learning of the warrant for his arrest, Starling surrendered and was placed in jail for six days. Starling testified that during the time he was in jail, both Sergeant Johnson and Constable Fuller visited him in jail, urging him to pay off the civil judgment. After his bond was reduced to personal recognizance and his wife paid off the civil judgment, Starling was released. At the suggestion of Fuller, the charges against Starling were dropped several months later.

In February 1989, the Starlings filed suit against Fuller, Proctor, Johnson, Jaroszewski, and Gene Hutchinson, another employee of the Williamson County Sheriff's Department. In their complaint, the Starlings alleged violations of 42 U.S.C. § 1983 and Texas state law, claiming that Starling was falsely arrested and imprisoned, maliciously prosecuted, and otherwise wrongfully treated by the defendants. Plaintiffs claimed defendants acted in retaliation for Starling's support of Fuller's political opponent

and for Starling's earlier complaints about Jaroszewski and Hutchinson in connection with their handling of a family dispute. In May 1991, plaintiffs added Sheriff Jim Boutwell and Williamson County as defendants. After a trial in October 1992, a jury found in favor of the defendants on all claims.

*B. Discussion*

*1. The Sixth Amended Complaint*

On May 1, 1992, the Starlings filed a motion for leave to file their sixth amended complaint. The Starlings wished to add a claim alleging the defendants retaliated against them after arresting Fred Starling in violation of their First Amendment rights. The court denied their motion to amend on May 19, 1992. The Starlings challenge that denial, contending it was an abuse of the trial court's discretion.

Federal Rule of Civil Procedure 15(a) provides that leave to amend complaints "shall be freely given when justice so requires." The decision as to whether to grant leave is "entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993) (citations omitted). Though leave need not be automatically granted, the district court's discretion is not unbounded. *Id.* (citations omitted). " "[I]f the district court lacks a "substantial reason" to deny leave, its discretion is not broad enough to permit denial.' " *Id.* (quoting *Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985)). The

district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citations omitted).

In *Wimm,* plaintiffs sought leave to amend their complaint after defendants filed a motion for summary judgment. The record showed that the plaintiffs sought leave to add claims based on facts of which they were aware before they initiated their action. This Court held that awareness supported a finding of bad faith and dilatory motive. *Wimm,* 3 F.3d at 141. Here, the record also supports such a finding. The defendants' actions forming the basis for plaintiffs' claims of retaliation occurred in 1987 and 1988, well before plaintiffs filed their original complaint in this action.[1] Though the Starlings argue they only learned of a *pattern* of retaliation in discovery during March and April of 1992, the actual conduct upon which plaintiffs based the claim occurred much earlier. Further, the plaintiffs knew of the conduct at the time it occurred. The pattern discovered in 1992 would only add support to their claim; it was not the conduct upon which plaintiffs sought to base their claim. Because plaintiff waited so long to attempt to add the claim, the district court could have found

---

[1]The Starlings argue defendants should have had notice of a First Amendment retaliation claim as early as the filing of their fourth amended complaint in May, 1991. Accordingly, plaintiffs as much as admit they had a basis for their retaliation claim at least a year before they sought to add the claim.

plaintiffs' made their motion for leave to amend in bad faith. Accordingly, the district court's denial of the motion was not an abuse of discretion.

*2. The 1992 Pretrial Order*

On May 15, 1991, the parties filed a joint pretrial order. On May 1, 1992, the parties submitted a second joint pretrial order. The second order included plaintiffs' purported retaliation claim. The order did not contain the parties' signatures, as required by the Local Rules for the Western District of Texas. Because of that deficiency, the court struck the pretrial order on May 19, 1992. On appeal, the Starlings claim the district court erred because they were given no opportunity to cure any problem with the pretrial order.

The Starlings' argument that they were given no opportunity to cure the deficiencies of the 1992 pretrial order does not comport with the facts. The order striking the pretrial order clearly stated the pretrial order did not comply with the Local Rules. Neither party attempted to resubmit the order at any time between May 19, 1992, when it was struck, and October 12, 1992, when trial began. Clearly, the parties had sufficient opportunity to cure any deficiencies in the pretrial order by resubmitting it. Accordingly, plaintiffs' argument lacks merit.

*3. The Supplemental, or Trial, Amendment to Pretrial Order*

On the second day of trial, the Starlings filed a motion for leave to file a trial amendment to the 1991 pretrial order.

Apparently, the motion was the Starlings' final attempt to plead a claim of post-arrest retaliation in violation of their First Amendment rights such that they could pursue it at trial. The court denied their motion to supplement. The Starlings challenge that denial.

The joint pretrial order "shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e). We review the district court's decision not to allow the modification of an existing pretrial order for an abuse of discretion. *Masinter v. Tenneco Oil Co.,* 929 F.2d 191, 194 (5th Cir.1991), *reh. granted, opinion confirmed and reinstated,* 938 F.2d 536 (5th Cir.1991) (citations omitted). No manifest injustice resulted from the district court's denial of the motion to amend the pretrial order. The Starlings knew of the facts underlying their post-arrest retaliation claim well before they filed their first pretrial order. They did not include that claim in the first pretrial order, nor did they begin to attempt to place the claim before the court until over a year after filing the 1991 pretrial order. Based on those facts, the Starlings cannot claim manifest injustice occurred when they were not permitted to amend the pretrial order at trial. *See Canal Ins. Co. v. First General Ins. Co.,* 889 F.2d 604, 609 (5th Cir.1989), *mandate recalled and reformed,* 901 F.2d 45 (5th Cir.1990).

*4. The Court's Exclusion of Jerry Shorten's Testimony*

The Starlings attempted to call Jerry Shorten as a witness at trial to support their post-arrest retaliation claim. The court

excluded his testimony, and the Starlings contend that exclusion was error. We review the district court's exclusion of testimony for an abuse of discretion. *United States v. Pace,* 10 F.3d 1106, 1115 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994). Plaintiffs sought to introduce Shorten's testimony as proof of their retaliation claim. That claim was not before the district court at the time of trial. Though the plaintiffs argue they asserted the retaliation claim in their fourth amended complaint, we disagree with that view of the complaint. That complaint addressed only plaintiffs' claims that Fred Starling was arrested solely to force him to pay a civil judgment—it contains no allegations supporting their claim of post-arrest retaliation. Further, we have held already that the district court properly struck the 1992 pretrial order. Consequently, the 1991 pretrial order governed the trial, and that pretrial order does not include plaintiff's post-arrest retaliation claim. Finally, plaintiffs, in their brief, admit the description of Shorten's testimony in the 1991 pretrial order gave no indication that he would testify as to matters relevant to a post-arrest retaliation claim. Because we conclude that claim was not before the district court, the testimony was not relevant to any issue, and the court did not abuse its discretion in excluding it.

Plaintiffs argue we should apply the four factors set forth in *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir.1990), to

determine whether the district court's exclusion of Shorten's testimony is an abuse of discretion. Those factors are used "to review [a] court's exercise of discretion to exclude evidence that was not properly designated." *Id.* In *Geiserman,* the court struck plaintiff's untimely expert witness designation and precluded any expert witness testimony in order to enforce both the court's scheduling order and local rules. *Id.* at 790. Here we have held the district court's exclusion of the evidence to be proper because the evidence is irrelevant, not because the evidence was not properly designated. Consequently, the *Geiserman* factors do not apply.

## 5. Allowing Paul Womack to Testify

Defendants named District Attorney Ken Anderson as a witness in their witness list. Anderson, however, was unavailable to testify at trial because he was trying a capital murder case. The defendants therefore called Assistant District Attorney Paul Womack as a substitute witness. Though the Starlings objected to him testifying, Womack was allowed to testify over their objection. The Starlings contend the court erred in allowing Womack's testimony because (1) he was a surprise witness who testified well beyond the scope of Anderson's planned testimony as described in the pretrial order; (2) the court allowed him to testify to legal opinions; and (3) the court allowed the defendants to introduce a new theory of defense at trial, largely through the testimony of Paul Womack.

### a. Surprise Witness

We review the trial court's decision to allow a witness not listed in the pretrial order to testify for an abuse of discretion. *Geiserman,* 893 F.2d at 791 (citations omitted). The trial court's discretion is to be guided by considering the following four factors: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness. *Id.*

Womack's testimony clearly was important to the defendants' case. Plaintiffs claimed Fred Starling was arrested to coerce him to pay a civil judgment he was contesting. As evidence of that claim, they sought to show there was no probable cause to arrest Starling for any crime under Texas law, thus demonstrating defendants' bad motive in arresting him. At least one of plaintiffs' witnesses, former assistant district attorney Randy Dale, testified that, in his opinion, the facts alleged in the criminal complaint against Starling did not constitute a crime. R18:762-63. Accordingly, plaintiffs opened the door to the issue of whether the complaint contained sufficient facts to establish probable cause that Starling committed a crime. Womack testified to the requirements for a valid arrest under Texas law, and he testified that if the facts stated by Constable Fuller were true, those facts would establish probable cause to believe Starling

committed the crime of retaliation. R19:1078-79. Womack's testimony covered the same subject as Dale's, and served as a direct rebuttal of Dale's testimony.

Despite the importance to defendant's case, the Starlings claim they were prejudiced by the district court allowing Womack to testify. Plaintiffs claim that before Womack testified, they had no idea defendants intended to claim there was probable cause to believe Starling had committed any crime other than aggravated assault. Accordingly, they were not prepared to rebut the claim that probable cause existed to believe Starling committed retaliation. The record belies plaintiffs' contention. As early as October 13, 1992, which was three days before Womack testified, the defense elicited an admission on cross-examination that the facts alleged in the criminal complaint against Fred Starling amounted to the crime of retaliation. See testimony of Jim Stinnett, a former employee of the Williamson County Sheriff's Department at R17:323-27, 338. Further, the defense elicited the same admission from Randy Dale on October 14, 1992. R18:785-86.

Even if that claim of prejudice is true, such harm clearly could have been cured by seeking a continuance. Plaintiffs claim they could not seek a continuance because the district judge had been consistently emphatic that the trial would be completed on the day Womack testified. However, the record does not show that plaintiffs even asked for a continuance when it became clear that the court was going to allow Womack to testify. Consequently, they

speculate when they now claim it was useless to do so because the court would have denied it.

Finally, defendants' reason for failing to identify Womack before trial does not suggest anything other than good faith. Defendants failed to list Womack simply because they intended to call the District Attorney, Ken Anderson, and listed Anderson in the 1991 pretrial order. However, Anderson was prosecuting a capital murder trial when this case finally came to trial. Defendants called Womack, who is an assistant district attorney, as a replacement witness.

Based on consideration of those factors, we cannot hold the trial court abused its discretion in allowing Womack to testify. Further, we cannot hold his testimony exceeded its permissible scope because it simply rebutted evidence presented by plaintiffs that Williamson County lacked probable cause to arrest Fred Starling. As defendants point out, plaintiffs' description of Dale's testimony in the 1991 pretrial order did not indicate clearly that Dale would address whether the facts alleged in the criminal complaint would state a crime. R2:208. Plaintiffs were allowed to raise that issue at trial, and defendants are entitled to address issues raised by plaintiffs.

*b. Legal Opinion Testimony*

Plaintiffs claim the district court erred in allowing Womack to testify on matters of substantive law such as: the general role of the magistrate in setting bail; whether evidentiary documents

stated probable cause; the legal effect of a technical mistake in a complaint; whether an arrest warrant was required; and that probable cause for the offense of criminal retaliation existed. As an assistant district attorney, Womack knows of the procedures followed to obtain an arrest warrant and to set bail, and what happens when there is a technical defect in the application for the warrant. Accordingly, he is qualified to testify to those matters, like any other expert. *See Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 508-09 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). As to the remainder of the testimony, plaintiffs' witnesses had been allowed to testify to the lack of probable cause. Clearly, the defendants had the right to meet that testimony with testimony of their own demonstrating probable cause did exist. "In general, when a party opens up a subject, there can be no objection if the opposing party introduces evidence on the same subject." *Francis v. Clark Equip. Co.,* 993 F.2d 545, 550 (6th Cir.1993) (citation omitted). We find no abuse of discretion.

### *c. New Defense*

Plaintiffs argue the district court erred in allowing defendants to introduce a new theory of defense through Womack's testimony. They cite no authority for the proposition that the court's actions were improper. As we already stated, plaintiffs raised the issue of the lack of probable cause, and now seek to preclude defendants from defending on that claim. Further,

notwithstanding their assertions to the contrary, plaintiffs had notice of this defense at least as early as three days before Womack testified, through the cross-examination of one of their own witnesses. Any testimony by Womack was merely cumulative of the earlier testimony.

## 6. Failure to Instruct the Jury

Plaintiffs complain that the district court failed to give several requested instructions, and that failure denied plaintiffs a fair trial. Specifically, plaintiffs sought the following instructions: (1) an instruction based on *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), to the effect that verbal criticism of law enforcement officers is constitutionally protected and that a peace officer must exercise a degree of restraint in the face of verbal criticism or challenge; (2) instructions on procedural and substantive due process issues affecting the validity of the arrest of Fred Starling, such as the requirement that the criminal complaint be made under oath, the four corners doctrine for reading the complaint, and law as to the result of the complaint containing conclusory allegations; and (3) an instruction on post-arrest retaliation based on the First Amendment.

### a. _Hill_ Instruction

Plaintiffs are entitled to have the court instruct the jury on their theory of the case if the instruction is legally correct, the theory is supported by the evidence, and the desired

instruction is brought to the court's attention in a timely manner. *Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 425 n. 10 (5th Cir.1985) (citing *Corey v. Jones,* 650 F.2d 803, 806 (5th Cir.1981)). Plaintiffs, however, are not entitled to have the jury instructed in the precise language or form they requested. *Id.* at 425 (citations omitted). In reviewing a claim that the district court erroneously instructed the jury, we "view the charge as a whole, in the context of the case, and we ignore technical imperfections." *Id.* The court "may refuse proposed instructions ... if the charge that is given covers the theory in substance; the judge, not the parties, has control over the language and form of jury instructions." *Id.* at 425 n. 10 (citing *Corey v. Jones,* 650 F.2d 803, 806 (5th Cir.1981)).

Plaintiffs sought an instruction to the effect that verbal criticism of law enforcement officers is constitutionally protected and that a peace officer must exercise a degree of restraint in the face of verbal criticism or challenge. See R11:2020. The court instructed the jury as follows:

> The second constitutional violation which plaintiffs allege is that Defendants violated Fred Starling's First Amendment Rights. The First Amendment of the Constitution of the United States gives every citizen the right to freedom of speech, which includes the right to complain about the conduct of a law enforcement officer and the right to support or criticize any political candidate or public official one chooses.

> Arresting a person in retaliation for his or her speech activities is a violation of his or her First Amendment rights if it is shown that the person's speech activities were a substantial or motivating factor in the defendant's decision to arrest him or her.

> If you find that plaintiffs have met this burden of proof, you must then determine whether the defendants have shown by a preponderance of the evidence that Fred Starling would have been arrested even if his political opinions or speech activities had not been considered, *i.e.,* because there existed probable cause. If the defendants show, by a preponderance of the evidence, that Fred Starling would have been arrested in any event, then you should find for the defendants with regard to plaintiffs' First Amendment claim.

R11:2139. The substance of the court's instruction covers plaintiffs' theory. Consequently, it was not error for the district court to refuse to give plaintiff's proposed instruction.

### b. Due Process Issues

All of the challenged due process instructions relate to the issue of whether the warrant authorizing the arrest of Starling was valid, the determination of which is essential to the plaintiffs' claim of false arrest. We will not reverse based on a challenged instruction " "if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case.' " *Pierce,* 753 F.2d at 425 (quoting *Bass v. USDA,* 737 F.2d 1408, 1414 (5th Cir.1984).

As the defendants point out, the jury's finding that Fred Starling threatened to shoot Constable Fuller if Fuller carried out his lawful duties moots plaintiffs' arguments. That behavior constitutes a felony under Texas law. *See* Tex.Penal Code § 36.06. Even if the requested due process instructions were given and the jury found the arrest warrant was procedurally deficient, defendants argue, the jury could not have found in favor of plaintiffs on the false arrest claim because the commission of a

felony in the presence of a peace officer negates the need for an arrest warrant. *Bolden v. State,* 634 S.W.2d 710, 713 (Tex.Crim.App.1982); *Caro v. State,* 771 S.W.2d 610, 616 (Tex.App.—Dallas 1989, no pet.). Accordingly, they argue, the fact that the arrest warrant was procedurally deficient would not invalidate the arrest. We agree. The district court's failure to give the requested due process instructions was not erroneous because they would not have changed the result of the trial.

### c. Post-Arrest Retaliation

We review the district court's refusal of a requested instruction for an abuse of discretion. *Jackson v. Taylor,* 912 F.2d 795, 798 (5th Cir.1990) (citing *Bryan v. Cargill, Inc.,* 723 F.2d 1202 (5th Cir.1984)). The refusal is an abuse of discretion only if there are pleadings and sufficient evidence to support the instruction. *Id.* (citing *Syrie v. Knoll Int'l,* 748 F.2d 304 (5th Cir.1984)). We have determined already that plaintiffs did not raise a claim of post-arrest retaliation based on the First Amendment in any of the pleadings before the court. Because the post-arrest retaliation claim was not before the court, the court did not err in refusing the requested instruction.

### II. APPEAL OF THE AWARD OF SANCTIONS

### A. Facts and Proceedings Below

During 1990, 1991, and the early part of 1992, the parties were involved in a number of discovery disputes. On April 29, 1992, the Starlings filed a motion for sanctions against Boutwell

and the County, as well as against James Ludlum, their attorney. On May 19, 1992, the district court assigned the motion to United States Magistrate Judge Stephen H. Cappelle, and Judge Cappelle conducted an evidentiary hearing on the motion on June 2, 1992. On August 25, 1992, the magistrate judge submitted his 104-page report and recommendation to the district court. The magistrate judge recommended that sanctions be awarded against Boutwell, Ludlum, and the County. The district court announced it would postpone consideration of the magistrate judge's recommendations until after a trial on the merits.

The jury rendered its verdict in favor of the defendants on all claims in October 1992. On November 6, 1992, the district court conducted its hearing on the motion for sanctions. At the beginning of the hearing, the district court announced its adoption of the majority of the magistrate judge's findings of fact[2] and its intent to impose sanctions based on those findings. Accordingly, the district court announced that it would only consider the issue of the amount of sanctions at the hearing. After the hearing, the district court assessed sanctions against Boutwell, Ludlum, and the County in the amount of $44,177.40, ordering that the liability for

---

[2]The district court adopted all of the magistrate judge's findings with the exception of the findings contained in paragraphs 51, 62, 63, 74, 95, 96, 101, 117, 121, and 122. The excluded findings included determinations that defendants had retaliated against plaintiffs and their witnesses, that plaintiffs had been highly prejudiced by defendants' discovery abuse and that defendants had delayed to take advantage of Fred Starling's heart condition. The district court did not indicate why it did not adopt those findings except to note that Ludlum's dilatory tactics had not prejudiced Plaintiffs.

the sanction was joint and several among the three. The district court incorporated the sanctions award into its final judgment, which the court entered on November 23, 1992. Ludlum, Boutwell and the County have each appealed the sanctions award.

## B. Discussion

In its order awarding sanctions against Boutwell, Ludlum, and the County, the district court noted that, while the same sanctions could be awarded under Federal Rule of Civil Procedure 11 or under its inherent authority, it was imposing the sanctions under Federal Rule of Civil Procedure 37. We review the imposition of Rule 37 sanctions under an abuse of discretion standard. *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1031 (5th Cir.1990).

### 1. Inadequate Notice

The cross-appellants Ludlum, Boutwell and the County (cross-appellants) assert that the imposition of sanctions against them violated their due process rights. While a district court has broad discretion in the awarding of sanctions, that discretion is limited by due process concerns. *Frame v. S-H, Inc.,* 967 F.2d 194, 204 (5th Cir.1992). Due process requires adequate notice and an opportunity to be heard. *American Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 530 (5th Cir.1992). The level of formality of the notice and proceedings correspond to the level of sanctions imposed. *American Airlines, Inc.,* 968 F.2d at 530. In *American Airlines, Inc.,* this Court found that the notice issued by Judge McBryde was adequate where the notice sufficiently described that

nature of the sanctioned party's conduct that the court wanted to address. *Id.* After it gives notice, a district court must also give the sanctioned party an opportunity to respond to the possible sanctions. *See Spiller v. Ella Smithers Geriatric Center,* 919 F.2d 339, 347 (5th Cir.1990) (Rule 11 sanctions).

Cross-appellants view of the magistrate judge's report and recommendation, as well as the district court's order adopting a substantial majority of the magistrate judge's findings, argues that the district court imposed sanctions in a manner which did not meet the requirements of due process. The motion for sanctions that the plaintiffs' filed against Ludlum, Boutwell and the County alleges that they had been dilatory with regard to the production of documents requested to prepare for the deposition of Boutwell. With regard to the relief requested in the motion, plaintiffs sought all costs for the deposition of Boutwell as well as all attorney's fees that plaintiffs' incurred due to the problems associated with the production of documents related to Boutwell's deposition. Plaintiffs' also sought attorney's fees related to the bringing of the motion for sanctions. The district court's order assigning the motion to the magistrate judge directed the magistrate judge to conduct "a full hearing and a recommendation regarding factual findings on the conduct of the attorneys and recommendations on what discovery, if any, should be accomplished prior to the next trial setting."

Pursuant to the district court's order, the magistrate judge

conducted an evidentiary hearing.  While the transcript suggests that the hearing was very lengthy, lasting almost a full day, the testimony given and the evidence admitted at the hearing were directed to whether defendants' had failed to produce requested documents for Boutwell's deposition and whether Ludlum and Boutwell were guilty of bad faith in failing to produce the requested documents.

Despite the narrow focus of the motion for sanctions, the order of reference and the evidence admitted at the hearing, the magistrate judge's report and recommendation and the district court's order adopting a substantial majority of the magistrate judge's findings of fact address issues well beyond the scope of the motion and hearing.  The report and recommendation includes a twenty page review of the procedural history of this case.  Much of that procedural history is devoted to dilatory tactics that the magistrate judge found Ludlum to have committed both before and after Boutwell and the County were joined as parties.

Boutwell and the County note also that there was substantial consideration given in the report and recommendation to discovery abuses that happened before they were joined as parties in the lawsuit in May of 1991.  The failure to produce certain Texas Crime Information Center/National Crime Information Center log data, Ludlum's failure to respond to the magistrate judge's order to either produce the log or swear that it did not exist and discovery delays that prompted plaintiffs to file a motion for contempt on

May 1, 1991, were all included in the magistrate judge's report and recommendation.

The magistrate judge also included an extensive review of Ludlum's past conduct that went beyond Ludlum's representation of Boutwell and the County in this lawsuit. The report and recommendation included a separate section entitled, "*PAST PATTERN OF CONDUCT OF ATTORNEY JAMES LUDLUM, JR.*" The section, which is sixteen pages long, includes a detailed description of Ludlum's conduct in two other cases in the United States District Court for the Western District of Texas. The report and recommendation also includes, as exhibits, docket sheets, district court orders and attorney correspondence related to those two cases. In this section, the magistrate judge describes numerous continuances and instances of delay attributable to Ludlum. While the district court indicated in its order adopting the report that it was not familiar with Ludlum's past conduct, it did concur in the magistrate judge's assessment and warned Ludlum that similar legal representation by him in the future would result in his inability to practice in the United States District Court for the Western District of Texas.

While the notice for the sanctions hearing did not indicate that the magistrate judge would address issues regarding dilatory tactics and discovery abuses before Boutwell and the County were joined in the litigation and regarding Ludlum's overall conduct in the Western District, it is not evident on the face of the record

that the district court imposed sanctions because of Ludlum's or this litigation's history. The magistrate judge found and the district court adopted findings that both Ludlum and Boutwell engaged in sanctionable delays with respect to Boutwell's deposition and discovery related to that deposition in this litigation. Sanctions were calculated on the basis of plaintiffs' counsel's hours found expended in the deposition dispute in this litigation multiplied by her hourly rate.[3] Any inadequate notice therefore constitutes harmless error that does not require reversal.

## 2. Failure to Consider Evidence

On August 25, 1992, the magistrate judge issued his report and recommendation. On September 4, 1992, Ludlum, Boutwell and the County filed a motion to reopen and reconsider, requesting that the magistrate judge reconsider his report and recommendation and that he reopen the evidence relating to the report and recommendation. On the same day, they filed their objections and notice of appeal from the magistrate judge's report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(C). In an order entered on September 11, 1992, the district court denied their motion to reopen and reconsider. In the same order, the district court concluded that the magistrate judge's "determination [would] stand on the record

---

[3]Even though the district court awarded less than the amount plaintiffs' sought, it is difficult to see how this dispute could have reasonably generated almost 250 hours of plaintiffs' attorney time, which constitutes more than one full month of work. Because that amount is unchallenged, the Court does not address it other than to take notice of it.

developed before him prior to the rendering of his opinion when all parties and their lawyers and the witnesses had full opportunity to present their evidence on the issues."  A review of the record indicates that this conclusion is not entirely accurate.

In their supplemental offer of evidence filed on June 23, 1992, two months before the magistrate's decision, plaintiffs included the affidavit of Jim Stinnett, who plaintiffs alleged was a witness discovered after the sanctions hearing.  Stinnett is a former employee to the Williamson County Sheriff's Department.  In his affidavit, Stinnett describes a list of personnel records that are maintained by that department.  He also indicates that he received a memorandum from Boutwell requesting that department employees not have any dealings or associations with Fred Starling or his business.  Stinnett was required to sign the memorandum and return it to his supervisor.  In his report and recommendation at paragraphs 38, 52 and 55, the magistrate judge referred to Stinnett's affidavit and concluded that personnel files of the County existed that had not been produced for discovery to the plaintiffs.  These findings were among those findings of fact relied on by the district court to determine that sanctions were appropriate.  In their objections to the report and recommendation, Ludlum, Boutwell and the County sought to show that Stinnett was a disgruntled former employee who was terminated in 1991.  Boutwell and the County further alleged that Stinnett subsequently filed a "whistleblower" lawsuit against the Williamson County Sheriff's

Department that was dismissed with prejudice on July 9, 1992. The district court does not refer to these circumstances in its order adopting the report and recommendation. Cross-appellants do not offer an explanation as to why they did not promptly challenge Stinnett's affidavit.

A more serious issue concerns the affidavit of Beverly Blevins. On April 29, Plaintiffs filed their motion for sanctions against the cross-appellants. As part of their motion for sanctions, plaintiffs included the affidavit of Beverly Blevins. In her affidavit, Blevins indicates that she worked in the Williamson County Sheriff's Department but was terminated on April 4, 1992. Also in her affidavit, she describes an office memorandum similar to the one described by Stinnett. She also indicates that the memorandum was from Boutwell, who instructed all employees of the Sheriff's Department not to have any business dealings with Fred Starling or Rick Perkins. While Blevins does not indicate it in her affidavit, Perkins was the investigator for plaintiffs' counsel. Blevins further indicates that she attempted to save her copy of the memorandum in her personal lockbox, which she apparently kept at the office, but that the memorandum was confiscated. When she was terminated, Blevins described how her supervisor referred to the memorandum when she was terminated. Finally, Blevins described how phone lines to and from the Williamson County Sheriff's Department were monitored by Williamson County personnel. She recalled hearing clicks on the telephone

during a conversation that she had with either Fred Starling or Rick Perkins.

In his report and recommendation at paragraphs 37 and 66, the magistrate judge referred to the Blevins affidavit to support his conclusion that Boutwell had failed to produce an internal memorandum which instructed employees of the Williamson County Sheriff's Department to avoid associating with and doing business with Fred Starling or Rick Perkins. The paragraphs which referred to the Blevins affidavit were also among the findings of fact that the district court adopted to impose sanctions.

In both their motion to reconsider and reopen and their objections to and appeal from the report and recommendation, cross-appellants attempted to submit affidavits from three employees of the County to show that Blevins was not an employee of the Williamson County Sheriff's Department and that the memorandum at issue did not exist. In order to explain their delay in submitting the affidavits, Bountwell and the County asserted that these affidavits constituted newly discovered evidence. In the context of a motion for new trial, newly discovered evidence warranting a new trial is such evidence that (1) would probably have changed the outcome of the trial; (2) could not have been discovered earlier with due diligence; and (3) is not merely cumulative or impeaching. *Diaz v. Methodist Hospital,* 46 F.3d 492 (5th Cir.1995). As all three of the affidavits are from employees of the County, they cannot argue that they could not have obtained

the affidavits earlier with due diligence. Moreover, these affidavits could have been filed as late as August 14, 1992, when plaintiffs filed their last supplemental offer of evidence and when Boutwell and the County filed their motion for leave to supplement evidence but before the magistrate judge had issued his report and recommendation. The motion for leave to file supplemental evidence did not refer to any affidavits, however, and was made up of Ludlum's now frequent assertions that he had been too busy to file supplemental evidence earlier. The affidavits therefore do not constitute newly discovered evidence as a matter of law.

The first of the three affidavits was from Paul Caldwell, who was the jail supervisor for the County. According to his affidavit, Blevins was an inmate in the Williamson County jail on April 3, 1992 but was released from jail on that same day on a bond from Ace Bail Bonding. Caldwell indicates in his affidavit that Ace Bail Bonding is owned by Rick Perkins. Caldwell further indicated that he had never seen a memorandum from Boutwell concerning Fred Starling's businesses.

The second affidavit was from Jill Bone, who was Boutwell's secretary. Bone indicated in her affidavit that her review of payroll records indicated that Blevins was never an employee of the Sheriff's Department. She also indicated in her affidavit that she had neither prepared nor seen a memorandum from Boutwell regarding Fred Starling's pawn shop.

The third affidavit was from Geniva Simpson, who was the

communications supervisor for the Sheriff's Department.  In her affidavit, Simpson also indicated that Blevins had not worked in the Sheriff's Department and that she had never seen a memorandum regarding Fred Starling's pawn shop or his businesses.  Simpson also indicated in her affidavit that she recalled that Blevins had visited the Sheriff's Department on one occasion and had said then that she was working for Fred Starling.  With no adequate explanation for lateness given, the district court clearly did not abuse its discretion in denying the motion to reopen and reconsider.

Following the district court's hearing on the sanctions issue, counsel for Boutwell and the County filed a letter on November 17, 1992, directed to the issue of the amount of attorney's fees that should be imposed as the sanction on Boutwell, the County and Ludlum.  Counsel attached to the letter a second affidavit from Blevins which had been prepared and signed on September 17, 1992.  In the second affidavit, Blevins indicates that almost all of the statements on her first affidavit were false.  She further indicates that the only portion of her first affidavit that was true was that, in late March or early April of 1992, while she was turning herself in on an outstanding warrant for theft by check, she saw a memorandum addressed to all County employees but did not recall who prepared it.  She further remembered that the memorandum referred to Ace Bail Bonds, Gold N Pond and Gold N Pawn.  These are businesses owned by either Rick Perkins or Fred Starling.  Blevins

further recalled that the memorandum advised people to be careful with those businesses. She further indicated that Fred Starling and Rick Perkins knew that she had never worked for the County because their company held the bond on her pending charge of theft by check. Blevins also described how Perkins had prepared the first affidavit and she had signed it without reading it. Since that time, she read the affidavit and realized that it was not what she had told Perkins. Finally, Blevins indicated in the second affidavit that she told plaintiffs' counsel, Rick Perkins and Fred Starling that the first affidavit was false. According to Blevins, they suggested that she not contact counsel for Boutwell and the County about the matter. In its order adopting the magistrate judge's report and recommendation and imposing sanctions on Boutwell, the County and Ludlum, which was issued on November 23, 1992, the district court did not refer to the second affidavit.

In her second affidavit, Blevins also indicates that she was not contacted by counsel for Boutwell and the County until September 10, 1992. No reason is given for waiting so long to contact Blevins. As potentially significant as the second Blevins affidavit is, the district court was never presented with an adequate reason for the delay in presenting this affidavit. This Court concludes that the district court did not abuse its discretion in refusing to consider the affidavits.

### 3. Fee Awarded to Lift Bankruptcy Stay

In his appeal of the sanctions award, Ludlum contests the

award of fees to the bankruptcy attorney, John Alvis, and to plaintiffs' counsel for their efforts to lift the automatic stay against Defendant David Proctor, who had filed for personal bankruptcy during the course of the litigation. Even though it was not in his charge to hear nor the subject of any motion for sanctions, the magistrate judge found in his report and recommendation that Proctor has filed his bankruptcy on May 4, 1992 but that Ludlum delayed filing a notice of bankruptcy until June 18, 1992. The magistrate judge concluded that the late notice of bankruptcy was calculated to interfere with the merits of the case. Concurring with the magistrate judge's determination, the district court awarded sanctions of $4,762 for the time spent by the bankruptcy attorney and $2,700 for the time spent by plaintiff's counsel that was related to Proctor's bankruptcy.

An examination of the docket sheet for this case indicates that in the district court's order of May 19, 1992, assigning the sanctions motion to the magistrate judge, the district court also vacated the trial setting of May 26, 1992 and did not order another trial setting. On September 1, 1992, the district court set the case for jury trial on September 28, 1992. On the date that Ludlum filed the notice of bankruptcy, there was not a trial setting in the case. It is therefore difficult to understand how the late notice was calculated to interfere with the trial of the case. Moreover, the plaintiffs would have incurred the expenses associated with lifting of the automatic stay regardless of the

timing of the notice of bankruptcy in order to proceed with their claims against Proctor. There was never a finding by either the district court or the bankruptcy court that the Proctor's filing was made in bad faith. This bankruptcy matter was also beyond the notice and stated purpose of the hearing. The district court therefore abused its discretion with regard to the award to Plaintiffs for the fees and expenses associated with obtaining the lift of the stay in Defendant David Proctor's bankruptcy case.

### III. CONCLUSION

We AFFIRM the district court's judgment with respect to the trial on the merits. We REVERSE and RENDER the district court's judgment with respect to the award of fees for the lifting of the bankruptcy stay. We AFFIRM the district court's judgment with respect to the remaining imposition of sanctions and REMAND for issuance of an order for payment of sanctions consistent with this opinion.